**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEREK M. EDWARDS,**

                                        **Plaintiff,**

                v.                                        6:13-CV-1260
                                                              (FJS)

**CAROLYN W. COLVIN,**
**Commissioner of Social Security Administration,**

                                        **Defendant.**
_____

**APPEARANCES**                                **OF COUNSEL**

**LEGAL SERVICES OF CENTRAL**          **CHRISTOPHER CADIN, ESQ.**
**NEW YORK - SYRACUSE**
472 South Salina Street
Suite 300
New York, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **MARIA P. FRAGASSI**
**OFFICE OF REGIONAL**                  **SANTANGELO, ESQ.**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff Derek M. Edwards brought this action pursuant to the Social Security Act, 42

U.S.C. §§ 405(g) and 1383(c)(3) ("Act"), seeking judicial review of a final decision of the

Commissioner of Social Security (the "Commissioner"), denying his application for benefits. *See generally* Dkt. Nos. 1, 13. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 13, 14.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for supplemental security income ("SSI") on October 8, 2010, alleging disability beginning on April 20, 2004. *See* Administrative Record ("AR") at 110-13. The Commissioner denied Plaintiff's application on January 13, 2011. *See id.* at 65-67. Plaintiff timely filed a written request for a hearing, *see id.* at 69-71, which was held on February 9, 2012 in Utica, New York, before Administrative Law Judge Edward I. Pitts ("ALJ"). *See id.* at 25-57. Attorney Cindy Hendrickson represented Plaintiff at the hearing. *See id.* at 64.

On April 6, 2012, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff had not "engaged in substantial gainful activity since October 7, 2010, the application date."
2) Plaintiff "has had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, and obesity."
3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
4) "After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to to lift and/or carry 20 pounds occasionally, ten pounds frequently, sit six hours in an eight-hour day, and stand and/or walk for two hours in an eight-hour day. [Plaintiff] is able to occasionally engage in all postural activities. He is able to reach in all directions without limitation with his right arm, frequently reach in all directions with his left arm, and frequently use his hands for twisting, turning, handling, grasping, fingering, feeling, and fine motor activity. This is consistent with the ability to perform slightly less than the full range of sedentary work as defined in 20 CFR 416.967(a)."

5) Plaintiff "is unable to perform any past relevant work."
6) Plaintiff "was born on August 13, 1966 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed."
7) Plaintiff "has at least a high school education and is able to communicate in English."
8) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [he] has transferable job skills."
9) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."
10) Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 7, 2010, the date the application was filed."

*See* AR at 12-20 (citations omitted).

The ALJ's decision became the Commissioner's final decision on August 6, 2013, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 1-6.  Plaintiff then commenced this action on October 10, 2013, and filed a supporting brief on April 23, 2014.  *See* Dkt Nos. 1, 13.  Defendant filed a response brief on May 30, 2014. *See* Dkt. No. 14.

In support of his motion, Plaintiff challenges the ALJ's findings with respect to his residual functional capacity and the availability of jobs in the national economy.  In particular Plaintiff argues that the ALJ improperly weighed the medical opinions in the record and improperly assessed his credibility.  Relatedly, Plaintiff argues that the ALJ erred by failing to seek further information from his physicians.  Additionally, Plaintiff argues that the ALJ erred by relying on the Medical-Vocational guidelines even though, he argues, he had significant nonexertional impairments.  *See generally* Dkt. No. 13, Pl.'s Br.

# III. DISCUSSION

## A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is

only entitled to receive benefits if he cannot perform any
alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the

Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142

F.3d 75, 80 (2d Cir. 1998) (quotation omitted).


**B. ALJ's residual functional capacity analysis**

Between steps three and four of the disability analysis, the ALJ must determine the

claimant's residual functioning capacity ("RFC"), which is defined as "the most you can still do

[in a work setting] despite your limitations." 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R.

§ 416.920(e). The RFC analysis considers "all of your medically determinable impairments of

which we are aware," even if they are not severe. 20 C.F.R. § 416.945(a)(2). The ALJ is to

consider "all of the relevant medical and other evidence" in assessing RFC. 20 C.F.R.

§ 416.945(a)(3).

In this case, Plaintiff advances three arguments with respect to the ALJ's RFC finding.

First, Plaintiff argues that the ALJ erred by not addressing his ability to understand and carry out

simple instructions, respond appropriately to supervisors and co-workers and usual work

situations, and deal appropriately with changes in routine, *see* Dkt. No. 13, Pl.'s Br., at 17,

presumably in reference to the Commissioner's description of unskilled work. *See* Social

Security Ruling 85-15, 1985 WL 56857, *4 (Jan. 1, 1985). In this respect, the regulations

provide that "[a] limited ability to carry out certain mental activities, such as limitations in

understanding, remembering, and carrying out instructions, and in responding appropriately to

supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past

work and other work." 20 C.F.R. § 416.945(c). However, it appears that Plaintiff has neither

alleged nor produced objective medical evidence of any medically determinable medical impairment that could reasonably be expected to produce symptoms resulting in any such mental limitations, let alone evidence that a reasonable mind would accept as supporting a conclusion that Plaintiff's mental functioning was limited.[1]  *See* 20 C.F.R. § 416.929(b).  Accordingly, the Court finds that the ALJ did not err by not expressly addressing this issue in his RFC analysis.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (instructing that an ALJ may rely on "what the record does not say" (citations omitted)).

Second, Plaintiff argues that "[t]here was no analysis or recognition of Plaintiff's pain," *see* Dkt. No. 13 at 17 n.5, and that the ALJ improperly weighed his credibility.  When a claimant makes subjective allegations of symptoms limiting his ability to function, the regulations provide that

> [y]our symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present . . . which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

20 C.F.R. § 416.929(b); *see also* 20 C.F.R. § 404.1529(b).  Accordingly, the Social Security Administration has adopted a two-step standard for assessing a claimant's credibility.  *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2 (July 2, 1996); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

> First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged.  20 C.F.R. § 404.1529(c)(1); *see* SSR 96-7P.  Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a

---

[1] The record does contain a single mention of potential drowsiness arising as a side effect of Plaintiff's medication.  *See* AR at 321.

credibility inquiry. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Taylor v. Barnhart*, 83 Fed. Appx. 347, 350-51 (2d Cir. 2003) (summary order).

*Meadors*, 370 F. App'x at 183 (footnote omitted). Furthermore, an ALJ

> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186, at *7.

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. *See* AR at 16. He then concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. *See id.* In so finding, the ALJ reasoned that Plaintiff's failure to seek medical treatment for his back between 2004 to 2010 suggested that his back problem was "not as severe as he alleges." *See id.* The ALJ further noted Plaintiff's lapse in treatment for his shoulder injury. *See id.* at 17. However, Plaintiff offered an explanation for this lapse in treatment at the hearing (questions by the ALJ):

> Q: All right. Okay, so you didn't go anywhere else after that to get your shoulder treated?
> A: No.
> Q: Why not?
> A: I didn't have a doctor or no coverage or anything like that.
> Q: Well why didn't you go back to an emergency room?
> A: Back to the emergency room wasn't a[n] option for me.
> Q: Why not?
> A: They didn't do nothing me, for me the first time.

*See* AR at 32.

To the extent that the ALJ did not expressly consider Plaintiff's explanation for his lapse in treatment before drawing a negative inference against him based upon such lapse, the Court finds this to be legal error. *See* SSR96-7p, 1996 WL 374186, at *7. However, in light of the

remainder of the ALJ's credibility analysis, including a thorough discussion of the objective medical evidence once Plaintiff did seek treatment, Plaintiff's activities of daily living, his presentation at the hearing, and his work history, the Court finds that any such error was harmless. *See Karpova v. Snow*, 497 F.3d 262, 269 (2d Cir. 2007) (stating that remand is required "'*only* where there is a significant chance that but for the error, the agency might have reached a different result'" (quotation omitted)); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (instructing that "'ALJ's failure to cite specific evidence does not indicate that such evidence was not considered'" (quotation omitted)).

Third, Plaintiff argues that the ALJ improperly weighed his physicians' opinions. The Commissioner's regulations instruct that

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis added). Thus, treating physician opinions are "'not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). "The report of a consultative physician may constitute such substantial evidence." *Id.* (quoting *Mongeur*, 722 F.2d at 1039). Additionally, an ALJ may properly afford less than controlling weight to a treating physician's medical source statement where the "medical source statement conflict[s] with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013).

When affording a treating physician's opinion less than controlling weight, the ALJ "'will always give good reasons'" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); 20 C.F.R. § 416.927(c)(2). To that end,

> [t]he factors that must be considered when the treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."

*Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (quoting *Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. § 416.927(c)(1)-(6).

In this case, Plaintiff argues that the ALJ erred by affording less than controlling weight to Dr. Bharti, his treating physician. The ALJ found that Dr. Bharti's opinion "is not entitled to controlling weight because it is not supported by his contemporaneous treatment notes or the objective medical evidence of record." *See* AR at 18. In particular, the ALJ noted Plaintiff's MRI results showing "only mild ankylosing spondylosis, mild disc herniation, mild or borderline stenosis at the L3-L4 and L4-L5 levels." *See id.* (citing AR at 224). He further noted that Dr. Bharti's treatment notes from November of 2011 showing that Plaintiff was able to touch his toes and twist his torso with little inhibition in addition to no strength, motor or sensory deficits. *See id.* (citing AR at 296-97). The ALJ also discussed the opinion of consultative examiner Dr. Shirley-Williams, who noted full range of motion in Plaintiff's lumbar spine and negative straight-leg raise tests bilaterally. *See* AR at 18 (citing AR at 215). For these reasons, the Court finds that the ALJ applied the correct legal standard and offered sufficient reasons to support his weighing of the medical opinions.[2] *See Petrie*, 412 F. App'x at 405; *Cichocki*, 534 F. App'x at

---

[2] Moreover, the Court finds that the ALJ did not err by not contacting Plaintiff's physicians for additional information under these circumstances. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.

(continued . . . )

75. Accordingly, the Court declines to disturb the Commissioner's weighing of the conflicting evidence in this case. *Cf. Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

In summary, for the above-stated reasons, the Court finds that the ALJ applied the appropriate legal standards in his RFC analysis and further that substantial evidence in the record supports his RFC findings. *See Richardson*, 402 U.S. at 401.

## C. ALJ's reliance on Medical-Vocational Guidelines

Ordinarily, the Commissioner meets her burden at step five of the disability analysis by applying the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids"). *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). However, "application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). In particular, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments . . . ."[3] *Id.* (quoting *Blacknail*, 721 F.2d at 1181).

Accordingly, "[t]he grid regulations may not be relied upon as the exclusive determinant of disability status if a claimant also suffers from a *significant* non-exertional limitation."

---

(. . . continued)
1996) (holding that ALJ was under no obligation to seek further information from treating physicians where he already possessed "a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

[3] An exertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (*i.e.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). *See* 20 C.F.R. § 404.1569a(b). "A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands," such as difficulty maintaining attention or concentrating. *Sobolewski v. Apfel,* 985 F. Supp. 300, 310 (E.D.N.Y.1997) (citing 20 C.F.R. § 404.1569a(a), (c)).

*Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 439 (S.D.N.Y. 2010) (citation omitted) (emphasis added). A significant nonexertional limitation is one that results in "'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Baldwin v. Astrue*, No. 07 Civ. 6958(RJH)(MHD), 2009 WL 4931363, *27 (S.D.N.Y. Dec. 21, 2009) (quoting *Bapp*, 802 F.2d at 606).

In this case, Plaintiff essentially argues that his "left side non-exertional impairments are significant" and that, accordingly, the ALJ erred by relying solely on the grids at step five. *See* Dkt. No. 13, Pl.'s Br., at 16. The ALJ found the following nonexertional impairments: the ability to occasionally engage in all postural activities, the ability to reach in all directions without limitation with his right arm, the ability to frequently reach in all directions with his left arm, and the ability to frequently use his hands for twisting, turning, handling, grasping, fingering, feeling, and fine moto activity. *See* AR at 16. He further found that Plaintiff's non-exertional limitations "have little to no effect on the occupational base for sedentary work. *See id.* at 20. The Commissioner's guidance on this point provides that limitation to occasional postural activities, including stooping, generally will "only minimally erode the unskilled occupational base of sedentary work." *See* SSR 96-9p, 1996 WL 374185, at *8. For this reason, the ALJ correctly found that Plaintiff's non-exertional impairments were not "significant" and that, accordingly, the ALJ properly relied upon the Medical-Vocational Rules at step five of the disability analysis. *Bapp*, 802 F.2d at 605. Accordingly, the Court finds that the substantial evidence in the record supported the ALJ's step-five finding. *See Richardson*, 402 U.S. at 401.

# IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 13, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: April 7, 2016
         Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge